**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| S & W Mobile Home & RV Park, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING PLAINTIFF'S** |
| | ) | **MOTION TO REMAND AND** |
| vs. | ) | **GARNISHEE'S MOTION TO DISMISS** |
| | ) | |
| B&D Excavating and Underground, LLC, | ) | |
| Bill Avery, LLC, | ) | |
| | ) | Case No. 1-17-cv-9 |
| Defendants, | ) | |
| | ) | |
| Assurance Company of America, | ) | |
| | ) | |
| Garnishee | ) | |

Before the court is S & W Mobile Home & RV Park, LLC's ("S & W") Motion to Remand (Doc. No. 10), wherein S & W argues this case should be remanded to North Dakota state court for want of the complete diversity of citizenship required by 28 U.S.C. § 1332 and improper removal under 28 U.S.C. § 1441. Garnishee Zurich American Insurance Company ("Zurich"), as successor in interest to Assurance Company of America, opposes the motion. (Doc. No. 14).

Also, before the court is an earlier filed Motion to Dismiss (Doc. No. 6) by Zurich, wherein it argues that this case must be dismissed for failure to state a claim upon which relief can be granted. S & W opposes that motion. (Doc. No. 9).

## I.   BACKGROUND

### A.   *The underlying state action*

The factual and procedural backgrounds giving rise to this action are straight-forward. In October 2015, S & W sued B&D Excavating and Underground, LLC ("B&D") and Bill Avery, LLC ("Avery") in North Dakota state court in Dunn County, alleging B&D and Avery provided faulty

workmanship at a site owned by S & W.  Neither B&D nor Avery appeared, and the state district court entered judgment in favor of S & W in the amount of $1,002,676.00.

### B.        The state garnishment proceeding

On September 9, 2016, S & W served a garnishment summons on Zurich, B&D's insurer. (Doc. No. 1-2).  On September 27, 2016, Zurich returned a garnishee disclosure form asserting it was not liable to B&D.  (Doc. No. 1-1).  On December 28, 2016, S & W filed an objection to this disclosure.  (Doc. No. 1-2).

### C.        Removal of the state garnishment proceeding and post-removal motions

Zurich then removed this action under 28 U.S.C. § 1332 by filing a notice of removal, dated January 5, 2017, on January 9, 2017.

Zurich filed its motion to dismiss on January 13, 2017.  Notably, one or more of the arguments that Zurich makes for dismissal revolve around its claim that S & W's garnishment action is an impermissible direct action against an insurer.  S & W filed a substantive response to the motion on February 3, 2017, contending, among other things, that the garnishment proceeding is not an impermissible direct action against an insurer.

S & W filed its motion for remand three days later alleging two deficiencies in the removal. First, notwithstanding having claimed that this action is not an impermissible direct action against an insurer in response to Zurich's motion to dismiss as discussed later, S & W now claims it is a direct action - at least for purposes of 28 U.S.C. § 1332(c)(1) - and that, because of this, diversity jurisdiction is lacking after a realignment of the parties.  S & W also contends that Zurich's removal of the action was untimely because it was too late.

Zurich filed a response to the motion for remand, contending that the garnishment is not an

impermissible direct action for purposes of 28 U.S.C. § 1332(c)(1), although still contending it is for purposes of state law. It also presents an argument for why its removal was timely.

On February 23, 2017, S & W filed a reply to Zurich's response opposing remand. In its reply, S & W included a new ground for why Zurich's removal was improvident, contending now that the removal was premature instead of being too late as originally claimed. Notably, not only was this new ground not alleged in the original motion for remand, the reply brief in which it was asserted was not filed until after the 30-day deadline for a filing a "motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction . . ." as required by 28 U.S.C. § 1447(c).

### D.    *The putative citizenship of the parties*

As represented to the court, Zurich is a citizen of both Illinois and New York. According to well-established precedent, S & W, B&D, and Avery assume the citizenship of their "members." OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007) (stating an "LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members."). According to Zurich: (1) Douglas Jelly, a Montana citizen, is the member of B&D, meaning B&D is to be considered a Montana citizen; Bill Avery, a Florida citizen, is the member of Avery, making Avery a Florida citizen; and (3) S & W is owned by two trusts whose trustee, Lois Selle, is a citizen of Minnesota, suggesting the trusts, and by extension S & W, are citizens of Minnesota. (Doc. No. 1, pp. 5-6). Because S & W does not contest these citizenships, the court will assume them to be accurate for purposes of this motion. Of course, if the assumed facts relevant to the existence of diversity of citizenship for some reason change, the court may again have to confront the issue since the parties cannot confer jurisdiction upon the court by agreement or acquiescence. E.g., Smith v.

Ashland, Inc., 250 F.3d 1167, 1172 (8th Cir.2001).

## II.     S & W's MOTION TO REMAND

### A.     *S & W's argument that the court lacks jurisdiction*

#### 1.     Governing law

In relevant part, 28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . ."  When removal was improper for want of subject matter jurisdiction, 28 U.S.C. § 1447(c) requires remand to state court.

Original jurisdiction exists under 28 U.S.C. § 1332(a)(1) when the amount in controversy exceeds $75,000 and the parties are citizens of different states.  The latter has been interpreted as requiring that all plaintiffs must be diverse from all defendants.  Universal Underwriters Ins. Co. v. Wagner, 367 F.2d 866, 870 (8th Cir. 1966) ("Universal Underwriters").   Further, it is not enough that the parties have captioned the case such that diversity nominally exists.  Rather, there must be an "actual" and "substantial" controversy between the parties.  See id.; see also Zavanna, LLC v. RoDa Drilling Co., No. 4:09-cv-022, 2009 WL 3720117, at *8 (D.N.D. Nov. 3, 2009) (concluding that the 8th Circuit has adopted the "actual and substantial" test despite having also referenced in Universal Underwriters, supra, the primary purpose of the suit); Hartford Accident and Indemnity Company. v. Doe Run Resources Corporation, No. 4:08-cv-1687, 2009 WL 1067209, at *2 (E.D. Mo. April 21, 2009) (same and citing other cases).  And, the court is required to "look beyond the pleading and to arrange the parties according to their sides in the dispute."  City of Indianapolis v. Chase Nat'l Bank of City of New York, 314 U.S. 63, 69 (1941) (quoted case omitted).

4

### 2.    Realignment of the parties

In this case, S & W contends, and Zurich does not appear to disagree, that B&D and Avery should be realigned with S & W because the three have a joint interest in having Zurich pay on the insurance policy, which would either eliminate or reduce the amount owed under the default judgment. This realignment is in keeping with a number of other federal courts that have considered proper party alignment within the context of a garnishment action against an insurer. Randolph v. Employers Mut. Liab. Ins. Co., 260 F.2d 461, 464 (8th Cir.1958) (stating the defendant in a garnishment action "should be aligned for jurisdictional purposes with the plaintiff, as it would be to [the defendant's] interest to have the judgment against him satisfied by his insurer."); Davis v. Carey, 149 F. Supp. 2d 593, 596 (D. Ind. 2001) (collecting a number of cases with similar holdings).

While this realignment does not nominally destroy diversity, it would if 28 U.S.C. § 1332(c)(1) applies. That part of § 1332 reads as follows:

> [I]n any *direct action* against the insurer of a policy or contract of liability insurance, whether, incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of--
> > (A) every State and foreign state of which the insured is a citizen;
> > (B) every State and foreign state by which the insurer has been incorporated; and
> > (C) the State or foreign state where the insurer has its principal place of business . . . .

(italics added).

### 3.    S & W's argument for why this a "direct" action" under § 1332(c)(1) lacks merit

S & W argues that this garnishment proceeding is a "direct action" for purposes of § 1332(c)(1) so that, in addition to Zurich's New York and Illinois citizenship, § 1332(c)(1) imputes B&D's Montana citizenship onto Zurich. Then, if B&D is realigned as a plaintiff for purposes of this action, diversity is destroyed since the result is at least one party on each side having the same citizenship.

5

That is, on the plaintiff's side, B&D is a Montana citizen and, on the defendant's side, so is Zurich by virtue of the citizenship imputed by § 1332(c)(1).

Zurich argues S & W misapplies § 1332(c)(1) because this action does not constitute a direct action under § 1332(c)(1). And, if that is the case, there would be no imputation of citizenship and complete diversity would still exist based Zurich's original citizenship.

The court agrees with Zurich's argument and is persuaded by the opinions of other federal courts which have held that garnishment actions under state law do not constitute "direct actions" under § 1332(c)(1). One such opinion from a sister court in the Eighth Circuit stated:

> The court finds the present action is not a "direct action" within the meaning of section 1332(c)(1). The proviso was enacted to keep ordinary state-court tort claims out of federal court. See Northbrook Nat. Ins. Co. v. Brewer, 493 U.S. 6, 10, 110 S.Ct. 297, 107 L.Ed.2d 223 (1989) (noting that "Congress added the proviso to § 1332(c) in 1964 in response to a sharp increase in the caseload of Federal District Courts in Louisiana resulting largely from that State's adoption of a direct action statute" whose effect was to "create diversity jurisdiction in cases in which both the tortfeasor and the injured party were residents of Louisiana, but the tortfeasor's insurer was considered a resident of another State"). "Congress' plain objective in amending § 1332(c) was to ensure that 'tort cases involving only local residents, which in the other States would come within the exclusive jurisdiction of the State courts' would not appear in federal court." Rosa v. Allstate Ins. Co., 981 F.2d 669, 678 n. 22 (2d Cir.1992), quoting S.Rep. No. 1308, 88th Cong., 2d Sess. 1 (1964), reprinted in 1964 U.S.C.C.A.N. 2778, 2779 (emphasis added in Rosa). Nebraska law does not authorize such direct actions. See Medical Protective Co. v. Schrein, 255 Neb. 24, 582 N.W.2d 286, 291 (1998).
>
> The essential feature of a tort "direct action" is that the insurer has been substituted as a party-defendant for the legally responsible insured. Rosa, 981 F.2d at 675 n. 10. The term "direct action" as used in 28 U.S.C. § 1332(c)(1) refers to a case "in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer without joining the insured or first obtaining a judgment against him." Beckham v. Safeco Ins. Co. of Am., 691 F.2d 898, 901–02 (9th Cir.1982) (citations omitted); accord McGlinchey v. Hartford Accident & Indem. Co., 866 F.2d 651, 653 (3d Cir.1989); Fortson v. St. Paul Fire & Marine Ins. Co., 751 F.2d 1157, 1159 (11th Cir.1985). Thus, unless the cause of action against the insurance company is essentially the same claim that would seek liability against the insured, the action is not a direct action. See Rosa, 981 F.2d at 675. . .
>
> The court's conclusion rests on the distinction, recognized in case law, between a tort claim to determine liability and a contract claim to determine coverage. See Searles v. Cincinnati

6

Ins. Co., 998 F.2d 728, 729 (9th Cir.1993) (an insured's bad faith action against his insurer is not a "direct action" within the meaning of § 1332(c), limiting "direct actions" to cases in which "a plaintiff is entitled to bring suit against the tortfeasor's liability insurer without joining the insured"); Rosa v. Allstate Ins. Co., 981 F.2d at 674–75 (an action by an injured automobile passenger against the automobile owner's no-fault insurer is not a "direct action" within the meaning of § 1332(c) because "[w]hereas a 'direct action' is a tort claim in which the insurer essentially stands in the shoes of its legally responsible insured, no-fault coverage is contractual in nature"); White v. United States Fid. & Guar. Co., 356 F.2d 746, 747–48 (1st Cir.1966) (finding that section 1332(c) "refers only to cases brought by an alleged victim of a tort under a 'direct action' statute against the liability insurer of the alleged tortfeasor"); Stockton v. General Accident Ins. Co., 897 F.2d 530, 1990 WL 20477 at *3 (6th Cir.1990) (unpublished opinion) (holding that a garnishment lawsuit brought by judgment creditors against an insurer is not a direct action for purposes of Section 1332(c)). A garnishment action most likely involves determination of coverage under a contract of insurance. See, e.g., Freeman v. Walley, 276 F.Supp.2d 597, 599–602, 2003 WL 21954755, *2–5 (S.D.Miss. April 30, 2003). Accordingly, the action is in the same posture as either a declaratory judgment action on coverage, or an action in which an injured plaintiff has obtained an assignment of insurance rights from a tortfeasor, both of which could have been originally brought in federal district court, assuming diversity. See Evanston Ins. Co. v. Jimco, Inc., 844 F.2d 1185, 1189 (5th Cir.1988) (holding that 28 U.S.C. § 1332(c) does not bar a declaratory judgment action brought by an insurer seeking a declaration as to coverage—"the fact that an insurer is a 'direct' party does not make the litigation a 'direct action' ").

Where a tort action has already been litigated against the insured, the insurer is no longer litigating the issue of its insured's liability but is instead "litigating the existence of a new liability"—whether it owes a debt to its insured. Butler v. Polk, 592 F.2d at 1295–96. Once a plaintiff sues the tortfeasor and obtains a judgment, the judgment debtor has an interest in the policy if it provides coverage for the judgment. The insurer is then subject to suit to collect on the judgment because it holds an asset of the insured. The insurer is in no different posture from any other person or entity that holds assets of the judgment debtor.

The court thus concludes that § 1332(c)(1) does not apply . . . .

Hipke v. Kilcoin, 279 F. Supp. 2d 1089, 1091-93 (D. Neb. 2003). Likewise, another sister

court from the Eighth Circuit concluded:

On the surface, it would appear that this garnishment proceeding is a direct action against the insurer. However, "direct action" is a term of art, and an understanding of that term demonstrates that this is not a direct action within the meaning of the statute.

Courts have uniformly recognized that section 1332(c) "was primarily intended to eliminate the use of diversity jurisdiction to gain entry into the federal district court of Louisiana to sue in tort under that state's direct action statute, which allows an injured party to sue directly the insurer of a tortfeasor without joining the tortfeasor himself as a defendant." Home Indemnity Co. v. Moore, 499 F.2d 1202, 1205 (8th Cir.1974); see also Hernandez v.

Travelers Ins. Co., 489 F.2d 721, 723 (5th Cir.1974). Courts have further recognized that in employing the phrase "direct action," Congress intended "to refer to statutes such as those in Louisiana and Wisconsin which allow a party injured by the negligence of an insured to pursue his right of action against the insurer alone." Velez v. Crown Life Ins. Co., 599 F.2d 471, 473 (1st Cir.1979) (quotation omitted).

This garnishment proceeding is not a direct action. Hayes is not suing the insurer in order to establish Courtney's liability to her; she established Courtney's liability in a proceeding against Courtney. In this proceeding, Hayes does not litigate any claim she has against Courtney, but only claims she has against his insurer. This case is not a direct action against the insurer within the meaning of section 1332(c), so diversity of citizenship and, consequently, federal jurisdiction, are both present.

Hayes v. Pharmacists Mut. Ins. Co., 276 F. Supp. 2d 985, 987 (E.D. Mo. 2003).

The court finds persuasive the foregoing discussions with respect to the statutory history and precedential development of § 1332(c)(1). In a direct action, the plaintiff substitutes the insurer for the insured as a party-defendant in suing to establish the insured's liability. In a garnishment action such as this, the insured's liability has already been established and the plaintiff is seeking to garnish on an insurance contract. In doing so, the plaintiff is not litigating liability of the insured, but is only litigating liability of the insurer and the insurer is no different position than any other party who might be liable to the judgment debtor. The two inquiries are, absent special circumstances, legally distinct, just as other federal courts have concluded under other state garnishment statutes.

Additionally, the garnishment process codified at N.D.C.C. ch. 32-09.1 bears no resemblance to the actions Congress sought to disallow from the federal courts. In the direct action, Congress sought to exclude from federal court actions brought pursuant to state statutes that allow the injured party to substitute an insurer for the insured as party-defendant in an action to establish liability of the insured. By allowing substitution of a foreign insurance company for a local insured defendant, these state statutes artificially created diversity when none would have otherwise existed. North Dakota's garnishment statutes do nothing of the sort. Garnishment is available in North Dakota only

after the plaintiff secures judgment against the insured defendant, at which point the plaintiff and the garnishee litigate the "pivotal question" of "whether the insurance policy provided coverage under the circumstances." Rebel v. Nodak Mut. Ins. Co., 1998 ND 194, ¶ 12, 585 N.W.2d 811 ("Rebel"). This litigation by way of garnishment between a local plaintiff, now judgment creditor, and a foreign insurance company is not a dispute between local residents being prosecuted in federal court on diversity grounds because of a state law allowing substitution of a foreign insurance company for the local defendant. Rather, the garnishment is a new action onto itself involving naturally diverse parties and N.D.C.C. ch. 32-09.1 does nothing to create diversity where it would otherwise not exist.

Here, S & W has already established liability on the part of B&D by way of the default judgment entered in state court. With that judgment, the sole issue to be litigated in this garnishment proceeding is whether Zurich is liable to pay under its insurance policy with B&D. This garnishment action is a dispute between citizens of different states and Zurich is in no different position than any other party that may be in possession of property belonging to B&D or who might be indebted to B&D. But for the potential ramifications of § 1332(c)(1), this is an action where complete diversity unquestionably exists. By allowing this case into federal court, the court does no damage to the ends Congress sought to address by enacting the direct action provision of § 1332(c)(1). For these reasons, the court concludes this is not a "direct action" within the meaning of § 1332(c)(1).

In arguing to the contrary, S & W cites Glover v. State Farm Fire & Cas. Co., 984 F.2d 259 (8th Cir. 1993) and Prendergast v. Alliance General Ins. Co., 921 F. Supp. 653 (E.D. Mo. 1996). Glover is of no moment here because the Eighth Circuit only considered whether the plaintiff/judgment creditor could "maintain a diversity-based federal declaratory judgment action directly against [the insurer] to determine whether [the] judgment debtor had coverage . . . ."

Lancaster v. Am. and Foreign Ins. Co., 272 F.3d 1059, 1064 (8th Cir. 2001) (negatively reviewing Glover). The circuit court did not consider whether a garnishment action was a direct action under § 1332(c)(1), such that the garnishee assumes the citizenship of the insured/judgment debtor.

S & W's citation to Prendergast, though more on point than Glover, is of no more avail. Missouri's equitable garnishment statute, Mo.Rev.Stat. § 379.200, allows a plaintiff to proceed in equity directly against an insurer for satisfaction of a judgment entered against the insured. Under Missouri law, equitable garnishment is a coexistent remedy with traditional garnishment. Allen v. Bryers, 512 S.W.3d 17, 30 (Mo. 2016). In Prendergast, the court concluded that equitable garnishments under Mo.Rev.Stat. § 379.200 are "direct actions" for purposes of § 1332(c)(1) because it allowed the plaintiff to proceed directly against the insured, thus achieving an end otherwise prohibited by Missouri's direct action ban. 921 F. Supp. at 655.

A number of reasons render S & W's reliance on Prendergast questionable. First, other federal courts within Missouri, particularly the western district, have disagreed with the eastern district and held equitable garnishments under Mo.Rev.Stat. § 379.200 are not direct actions under § 1332(c)(1). See Peterson v. Discover Property & Cas. Ins. Co., No. 11-6115-CV, 2012 WL 728353, at *2 n.1 (W.D. Mo. March 6, 2012). So whether equitable garnishment actions under Mo.Rev.Stat. § 379.200 are direct actions under § 1332(c)(1) is far from a settled question, making Prendergast of questionable precedential value. Second, even if equitable garnishment actions under Mo.Rev.Stat. § 379.200 are properly considered direct actions under § 1332(c)(1), Missouri courts have held "traditional" garnishments brought under Mo.Rev.Stat. ch. 525 are not direct actions under § 1332(c)(1). See Hayes v. Pharmacists Mut. Ins. Co., 276 F. Supp. 2d 985 (W.D. Mo. 2003); see also Village at Deer Creek Homeowners Ass'n, Inc. v. State Auto, Ins. Co., No. 4:11-cv-339, 2011

WL 2681229 (W.D. Mo. July 8, 2011) (recognizing the distinction between how equitable garnishments and traditional garnishments under Missouri law should be treated for purposes of § 1332(c)(1)).  North Dakota does not have an equitable garnishment statute and judgment creditors may only proceed in garnishment under N.D.C.C. ch. 32-09.1, which is, in substance, analogous to Mo.Rev.Stat. ch. 525.  S & W's reliance on Prendergast misses that distinction.  The court finds no compelling reason why Prendergast should have any impact on the conclusion that a garnishment action under N.D.C.C. ch. 32-09.1 is not a direct action under § 1332(c)(1).

S & W also cites Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 998 (D. Minn. 1999), in which the federal district court for Minnesota concluded that the garnishment action initiated under Minnesota law in that case constituted a direct action for purposes of § 1332(c)(1). In Reko, the plaintiff and defendant were Minnesota citizens and the insurer a citizen of New York.  Id. at 1002. The plaintiff and defendant entered into a Miller-Shugart agreement and the plaintiff sought to garnish against the foreign insurer.[1]  In concluding the garnishment qualified as a direct action under § 1332(c)(1), the Reko court stated the "holding in this case is limited to garnishment proceedings that arise from the context of a 'Miller–Shugart' settlement."  Id. at 1004 n.4.

There are other decisions from the federal courts for Minnesota that have disagreed with Reko, however.  See Kuepers Const., Inc. v. State Auto Ins. Co., Civil No. 15-449, 2015 WL 4247153 (D. Minn. July 13, 2015) (stating "[u]pon reexamination and further development of the case law, the Court no longer finds the reasoning of Reko persuasive and therefore reverses course to join with a multitude of courts in concluding that a suit brought against an insurer for the insurer's

---

[1]  A Miller-Shugart settlement derives its name from the Minnesota Supreme Court's decision in Miller v. Shugart, 316 N.W.2d 729 (Minn.1982) (describing the nature of and enforcing the settlement).  See Sellie v. North Dakota Ins. Gaur. Ass'n, 494 N.W.2d 151, 155 (N.D. 1992).

independent wrongs is not 'direct' within the context of § 1332(c)(1)(a)."); Interlachen Prop., LLC v. State Auto Ins. Co., 136 F. Supp. 3d 1061, 1073 (D. Minn. 2015) (stating "[a]lthough Reko arises in a slightly different factual setting, to the extent it would call for a different result than the cases cited above, the Court disagrees with its reasoning and conclusion."). This court finds the reasoning of those cases to be persuasive. Hence, if there was a Miller-Shugart agreement in place here, the court would not conclude this would be a direct action within the meaning of § 1332(c)(1).[2]

Given the court's conclusion that this action is not a "direct action" under § 1332(c)(1), Zurich does not assume B&D's Montana citizenship pursuant to that section, meaning complete diversity exists amongst the parties. Because complete diversity exists, and this matter unquestionably satisfies the jurisdictional amount, this court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1).

**B.    S & W's argument that Zurich's removal of this action was too late**

The second ground alleged in S & W's motion to remand is that Zurich's removal of the action was untimely. As explained in its supporting brief, this was because Zurich failed to remove the action within 30 days after having been served with the initial pleading setting forth a claim for relief against it (which S & W then asserted was the garnishment summons) as required by 28 U.S.C. § 1446(b)(1), which reads:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is

---

[2] As discussed later, the North Dakota Supreme Court in a number of cases has addressed the liability of an insurance carrier in a garnishment action brought after the parties have entered into a Miller-Shugart agreement. E.g., Peterson v. Dakota Molding, Inc., 2007 ND 144, 738 N.W.2d 501; D.E.M. v. Allickson, 555 N.W.2d 596 (N.D. 1996); Medd v. Fonder, 543 N.W.2d 483 (N.D. 1996)

shorter.

Zurich disagrees.  It relies upon the exception to the statutory 30-day shot clock for removal provided by § 1446(b)(3), which reads, in relevant part, as follows:

> if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

Zurich contends it could not determine from the garnishee summons what the citizenships of the other parties were and that it removed the action within 30 days of having received sufficient information that it allowed it to determine that there was a basis for federal jurisdiction based on diversity of citizenship.

S & W served the garnishee summons on September 9, 2016.  (Doc. No. 1-2).  The summons contained the captioning from the state court proceeding identifying S & W as the plaintiff, B&D and Avery as defendants, and Zurich as the garnishee.  The summons also identified the amount of the default judgment.  The summons did not identify any information pertaining to the parties' citizenships, however, and S & W concedes as much.  (Doc. No. 11 p. 12).

This concession notwithstanding, S & W argues Zurich had access to the parties' citizenships at the time of service of the garnishment summons because Zurich was in possession of the complaint from the underlying state court action that indicated S & W was an LLC with its primary place of business in North Dakota.  With this cumulative information, S & W argues that Zurich's basis for removal - i.e., diversity of citizenship and a disputed amount in excess of $75,000 - was ascertainable as of September 9, 2016.  But, even if not, S & W alternatively argues it was incumbent upon Zurich to investigate the parties' citizenships within thirty days of receiving the garnishment summons and Zurich's failure to do so was to its own detriment.

13

Zurich argues it did not have sufficient information on September 9, 2016, to ascertain whether diversity existed so as to warrant removal.  Rather, Zurich argues that the existence of diversity was not clear until correspondence between the two sets of counsel in mid-December 2016 provided information pertaining to the possible citizenships of the trusts owning S & W.  If that date is given credence, Zurich's removal on January 5, 2017, would have been timely under § 1446(b)(3).

In examining whether a basis for removal was ascertainable, the "thirty-day time limit of section 1446(b) begins running upon receipt of the initial complaint only when the complaint explicitly discloses the" circumstances giving rise to federal jurisdiction.  In re Willis, 228 F.3d 896, 897 (8th Cir. 2000).  This precludes consideration of a defendant's subjective knowledge.  Id.; see also Knudson v. Systems Painters, Inc., 634 F.3d 968, 974 (8th Cir 2011).

Here, the garnishment summons did not contain any information regarding the parties' citizenship.  The complaint from the underlying action, which Zurich had in its possession, indicated S & W was an LLC with its principal place of business in North Dakota.[3]  This, standing alone, is insufficient to invoke diversity jurisdiction because an LLC's membership controls the citizenship of the LLC, not the state of the LLC's business, rendering this information of little consequence.  OnePoint Solutions, 486 F.3d at 346 (8th Cir. 2007).  On the critical issue of S & W's membership, the garnishment pleadings and the underlying complaint are silent.  Further compounding this problem, S & W is owned by two trusts.  Nothing in the initial pleadings or complaint from the underlying case provide any information as to the trusts' trustees or their members, one or both of which may control the citizenship of the trusts and, in turn, control S & W's citizenship.  See, e.g.,

---

[3] The court expresses no opinion on whether relying on the complaint from the underlying action, which was not provided in the garnishment pleadings in this case, to provide the potential basis for removal is appropriate under § 1446(b)(3).  In this case, it does not effect the outcome.

Americold Reality Trust v. Conagra Foods, Inc., 136 S.Ct. 1012 (2016); Raymond Loubler Irrevocable Trust v. Loubler, 858 F.3d 719, 732 (2d Cir. 2017); City of Beach v. Goepfert, 147 F.2d 480, 481 (1949). Based on the information available as of September 9, 2016, the citizenship status of S & W was anyone's guess and the garnishment summons and other papers served by S & W did not suffice to alert Zurich that the matter might be removable.

After combing the record, the court concludes the first time Zurich could reasonably be charged with ascertaining a possible basis for diversity jurisdiction was on December 16, 2016. In an email dated that day, S & W's counsel provided the citizenships of the trustees and beneficiaries for the trusts owning S & W. (Doc. No. 12-5). Under § 1446(b)(3), this gave Zurich thirty days to remove the action to federal court which Zurich did when it filed its notice of removal on January 5, 2017. (Doc. No. 1).

S & W argues that Zurich should have inquired about the membership of the trusts owning S & W within thirty days from service of the garnishment summons. S & W has not pointed to, nor has the court found, any precedent from the Eighth Circuit imposing a duty on the party seeking removal to investigate the basis for removal beyond the documents provided by the plaintiff. Requiring Zurich to go beyond the four corners of the initial pleadings would be inconsistent with Willis and Knudson requiring the plaintiff to explicitly set forth the basis for removal in order to trigger the thirty-day removal period. Other courts, within the context of cases involving the Class Action Fairness Act, which incorporates the removal standards of § 1446(b)(3), have held a defendant is not required "to investigate or to supply facts outside of those provided by the plaintiff." See. e.g., Romulus v. CVS Pharmacy, Inc., 770 F.3d 67, 75 (1st Cir. 2014); see also Cutrone v. Mortgage Electronic Registration Systems, Inc., 749 F.3d 137, 143 (2d Cir. 2014) (stating

15

"defendants have no independent duty to investigate whether a case is removable."); <u>Graiser v. Visinoworks of America, Inc.</u>, 819 F.3d 277 (6th Cir. 2016) (same). Accordingly, Zurich was not required to independently research potential bases for removal. But, even if it was, the court concludes it acted within a reasonable amount of time.

### C.    *S & W's contradictory argument - raised for the first time in its reply brief - that Zurich's removal was too early*

S & W argued for the first time in its reply brief that Zurich is not a "defendant" under § 1441(a) because S & W had not yet joined it as a party by way of service of a supplemental complaint. Accordingly, S & W argues Zurich's removal was premature and the case must be remanded for this reason.

In response, Zurich argues the court should not reach the merits of this argument because S & W did not raise the issue in its initial briefing with the court. In the alternative, Zurich argues the garnishment action in state court began at issuance of the garnishment summons, making it a party to the action at the time of service and thus a "defendant" for purposes of § 1441(a) even though labeled as a "garnishee."

During oral argument, S & W prudently elected to waive this argument, although it likely had done so already.[4] Consequently, the court need not decide whether the inclusion of the argument in

---

[4] Generally speaking, courts are under no obligation to address issues raised for the first time in reply briefing. See <u>Powell v. St. Francois Cty.</u>, No. 4:14-cv-1230, 2016 WL 695674 at *2 (E.D. Mo. Feb. 19, 2016) (stating "a court generally will not consider an issue raised for the first time in a reply brief."); <u>see also</u> <u>Kirt v. Fashion Bug # 3253, Inc.</u>, 479 F. Supp.2d 938, 948 n.4 (N.D. Iowa 2007) (stating "[r]aising a new issue in a reply brief, however, generally does not require the court to consider that issue."). In this instance, given what S & W first urged in its opening brief (which was that the removal was too late), the court likely would have concluded that its contradictory argument raised for the first time in its reply brief (which was the removal was premature) rose to the level of being a waiver. <u>Cf.</u> <u>Peterson v. Berryhill</u>, No. 16-5740, 2017 WL 2701838, at *4 (C.D. Cal. June 21, 2017) (claim of error on the part of an SSA ALJ raised for the first time in a reply brief deemed waived); <u>Edgewell Personal Care Brands v. Abaad Massuot Yitzhak</u>, No. 15-1188, 2017 WL 1900736, at *4 (D. Del. May 9, 2017) (failure to timely include an argument during briefing amounted to a waiver of the argument); <u>Roy v. McCollum</u>, No. 15-306, 2017 WL 1740468, at *5 (W.D. Okla. May 3, 2017) (argument raised for the first time in a reply brief deemed waived).

its reply brief was timely under 28 U.S.C. § 1447(c)[5] or what pleading under North Dakota's

garnishment process triggers the right to remove.[6]

_____

[5] The courts are in disagreement with respect to whether grounds for remand alleged for the first time after the expiration of the time for filing a motion to remand under 28 U.S.C. 1447(c) can be considered if a timely motion for remand on other grounds was filed. Compare, e.g., Northern California Dist. Council of Laborers v. Pittsburgh-Des Moines Steel Co., 69 F.3d 1034, 1038 ("We hold that § 1447(c) prohibits a defect in removal procedures from being raised later than 30 days after the filing of the notice of removal, regardless of whether a timely remand motion has been filed.") with BEPCO, L.P. v. Santa Fe Minerals, Inc., 675 F.3d 466, 470-71 (5th Cir. 2012) (concluding that new grounds can be considered because "for a timeliness analysis under Section 1447(c), the central inquiry is whether the remand motion satisfies the 30–day requirement."). The court is not aware of an Eighth Circuit decision on the issue.

[6] Several judges in the District of Minnesota have concluded that the pleading triggering the right to remove under Minnesota's garnishment statutes is the motion to seek leave to file a supplemental complaint. See, e.g., Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 998, 1001 (D. Minn. 1999) ("In the context of garnishment proceedings in Minnesota, the motion for leave to file a supplemental complaint is analogous to filing a new complaint in a civil action and is the appropriate trigger for the thirty day removal period under 28 U.S.C. § 1446(b)."). This court has not ruled on the issue in the context of North Dakota's statutory scheme, which is similar to Minnesota's. And, while the reasons articulated by the district court in Minnesota are good ones, there is a contrary argument to be made for the triggering pleading being the service of the garnishment summons.

Under 28 U.S.C. § 1446(b), a "civil action or *proceeding*" can be removed by the filing of a notice of removal within 30 days after receipt by a defendant by service or otherwise of the "initial pleading setting forth the claim for relief upon which such action or *proceeding* is based . . . ." (italics added). Under North Dakota's garnishment statutes, the garnishment summons does more work than a summons in an ordinary civil action. Among other things, (1) the garnishment summons must set forth the amount that will claimed by the plaintiff, and (2) the garnishment summons and/or the mandatory "garnishee disclosure form" (which must accompany the summons,) requires that the garnishee disclose any money or property held that is subject to being garnished as well as to set forth whether the garnishee is claiming any adverse interest, setoff, or other "defense." N.D.C.C § 32-09.1-07, 32-09.1-09. All of this precedes the ability of the plaintiff to seek leave to file a supplemental complaint against the garnishee under § 32-09.1-12. Further, if the garnishee fails to respond to the garnishment summons within the time required, the court upon affidavit of the plaintiff may render a judgment against the garnishee without plaintiff having to first seek leave to file a supplemental complaint. N.D.C.C. § 32-09.1-14. Finally, the garnishment process contemplates (and in fact specifically exists) to provide for recovery of the garnished property from the garnishee.

Given all of this, there is an argument of some force that the garnishment summon constructively is the *initial* pleading setting forth a claim for relief upon which the proceeding is based and that the garnishee constructively is a defendant for purposes of s 1446(b). See Northern States Power Co. v. TriVis, Inc., No. 16-51, 2016 WL 2621953 (D. Minn. May 6, 2016) (no objection raised to removal of a Minnesota garnishment proceeding within thirty days of service of the garnishment summons and before the filing of a motion seeking leave to file a supplemental complaint); Hamptons at Metrowest Condominium Ass'n, Inc. v. Nationwide Prop. & Cas. Ins. Co., No. 6:15-cv-753, 2015 WL 5021684, **3-4 (M.D. Fla. Aug. 24, 2015) (if garnishment actions are removable, the pleading triggering removal under Florida law would be the writ of garnishment because it sets forth the amount that is being claimed and default judgment can be entered against the garnishee for failing to respond); cf. Armentrout v. Atlantic Cas. Ins. Co., 731 F. Supp. 2d 1249, 1258 (S.D. Ala. 2010) (rejecting the argument that the garnishee was "not a 'defendant' entitled to removal, and therefore this cause must be remanded out of this Court."); Clarise Sportswear Co. v. U & W Mfg. Co., 223 F. Supp. 961, 961-62 (E.D. Pa. 1963) (holding removal by a garnishee was proper despite the argument "the garnishee [was] not a defendant in the State action as required by 28 U.S.C. § 1441(a)").

Notably, this construction has at least a couple of advantages over other possible interpretations. First, the service of the garnishment summons coincides with what is deemed to be the commencement of the garnishment process under North Dakota law. Under a prior garnishment statutory scheme, the North Dakota Supreme Court noted a

## III.  <u>ZURICH'S MOTION TO DISMISS</u>

Zurich moves to dismiss this action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), arguing: (1) S & W's garnishment against Zurich constitutes a direct action against an insured not allowed under North Dakota law (notwithstanding it having claimed it is not a direct action for purposes of 28 U.S.C. § 1332(c)(1)); (2) S & W lacks standing to litigate insurance coverage on a contract to which it was not a party: and (3) any obligation of Zurich was discharged by operation of N.D.C.C. § 32-09.1-11.

S & W responds by arguing this garnishment action is not a direct action against Zurich despite it having earlier claimed it was pursuant for purposes of 28 U.S.C. § 1332(c)(1).  It further argues that it has standing to proceed by garnishment against Zurich, and that the action has not been discharged under § 32-09.1-11.[7]

---

garnishment "action is instituted by service of the garnishee summons and affidavit for garnishment upon the garnishee." <u>Park, Grant & Morris v. Nordale</u>, 170 N.W. 555 (N.D. 1918).  Reaffirming this principle under the current garnishment scheme, save legislative amendments not relevant to this case, the Bankruptcy Court for North Dakota observed that a "creditor commences the garnishment by serving upon the garnishee a garnishee summons." <u>In re Heilman</u>, 39 B.R. 492, 493 (D.N.D. Bank. 1984).  Second, it places the federal court in the position of ruling upon a default judgment against the garnishee if that should become necessary as well whether there is sufficient cause to justify the continuation of the process by way of supplemental complaint if there is no default.  This is consistent with the underlying purpose of the removal statutes, which is to provide a federal forum.

It may be because of one or more of these things that the Eighth Circuit has twice ducked the question of whether the triggering pleading for purposes of federal removal under Minnesota law is the garnishment summons or the later notice of a request to file a supplemental complaint or still later the service of the supplemental complaint. <u>Lang v. SSA</u>, 612 F.3d 960, 964-65 (8th Cir. 2010)  ("It is again unnecessary for us to decide which event triggers the thirty-day period, because the government's removal was untimely whether the clock started to run when the initial garnishment summons was served or when the supplemental complaint was served."); <u>Koehnen v. Herald Fire Ins. Co.</u>, 89 F.3d 525, 529 n.5 (8th Cir. 1996) ("We therefore need not decide which of Koehnen's state court filings was the "initial pleading" for removal purposes—his garnishment summons to Herald Fire, or his state court motion to file a supplemental complaint after Herald Fire had denied garnishee liability.").

[7]  Neither party has offered has offered a principled basis for why there is a difference between whether or not this action is a direct action for purposes of 28 U.S.C. § 1332(c)(1) and whether it is or not under state law. The flip-flopping by both parties on this question has left the court suffering from legal whiplash.

### A.    Standard for Rule 12(b)(6) motions

The standard for whether to grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is well-established.  Under Fed. R. Civ. P. 12(b)(6), the court must accept all factual allegations set forth in the complaint as true.  Although the court may generally look only to those allegation set forth in the complaint, "the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." Mattes v. AVC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003) (citing Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)).  After doing so, the court must determine whether, on those assumed facts, the plaintiff has stated a plausible claim upon which relief may be granted.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

### B.    Zurich's argument that this is an impermissible direct action

Zurich argues this garnishment action should be dismissed because it runs afoul with North Dakota's long-standing prohibition on direct actions.  S & W argues Zurich's reliance on this prohibition is misplaced because a garnishment action is not a direct action under North Dakota law.  These arguments present the question of whether a garnishment action against a judgment debtor's insurer, in an attempt to collect on an insurance policy between the judgment debtor and the insurer, is a direct action under North Dakota law.  The parties have not cited, and the court has not found, any North Dakota Supreme Court decision directly answering this question.  However, the reason for this may be that most litigants have assumed it not to be an issue given the number of garnishment actions against insurers the North Dakota Supreme Court has addressed without one

mention of it.[8]

North Dakota does not have a direct action statute allowing a plaintiff with a claim against an insured party to bring suit directly against that party's insurer to establish liability of the insured. Shermoen v. Lindsay, 163 N.W.2d 738, 745 (N.D. 1968). The North Dakota Supreme Court has also not allowed direct actions at common law. Id. As a result, "[a]bsent a clause in the insurance contract bestowing the right to bring a direct action against the insurer, an injured party's claim must be asserted against the tortfeasor, not the tortfeasor's insurer." Dvorak v. Am. Family Mut. Ins. Co., 508 N.W.2d 329, 331 (N.D. 1993). This generally precludes the plaintiff from joining an insurer in an action to establish liability of the insured. Id.; but see James v. Young, 43 N.W.2d 692 (N.D. 1950) (allowing joinder of an insurer in a negligence action against an insured with compulsory insurance). Joinder of an insurer prior to this establishment warrants dismissal because "the action against it, at [that] stage of the proceedings, is premature." Shermoen, 163 N.W.2d at 745. This disallowance, however, "in no way implies that an ultimate responsibly may not devolve upon [the insurer] should judgment in favor of the plaintiff . . . be subsequently entered." Id.

As implicated here, N.D.C.C. ch. 32-09.1 provides the statutory framework and procedures governing garnishments in North Dakota. In North Dakota, any "creditor is entitled to proceed by garnishment . . . against any person . . . indebted to or having any property in possession or under control, belonging to the creditor's debtor after securing a judgment against the debtor in a court of competent jurisdiction." N.D.C.C. § 32-09.1-02. Where there is a dispute about whether a garnishee

---

[8] Without any prior decision directly on point, the court must predict how the North Dakota Supreme Court would answer the question. It is well-established that, "[i]n the absence of controlling North Dakota law, the Court is obligated to predict what North Dakota law is based upon 'relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data.'" Hoff v. Elkhorn Bar, 613 F. Supp. 2d 1146, 1149 (D.N.D. 2009) (quoting Bockelman v. MCI Worldcom, Inc., 403 F.3d 528, 531 (8th Cir. 2005)).

is liable to a judgment debtor, a garnishment proceeding is one forum to determine whether that liability exists. Shortridge v. Sturdivant, 155 N.W. 20, 21 (N.D. 1915) (stating the "principal question to be determined in this [appeal from a garnishment] action is whether [the garnishee] was indebted to the defendant."). Consistent with this principle, the North Dakota Supreme Court has declared that a "pivotal question in a garnishment action" involving a judgment creditor and an insurer is "whether the insurance policy provided coverage under the circumstances." Rebel, 1998 ND 194, ¶ 12. In answering this question, the North Dakota Supreme Court, without objection on direct action grounds, has considered numerous appeals from garnishment actions where a judgment creditor attempted to garnish against an insured's insurance policy and the insurer contested coverage. See, e.g., Close v. Eberts, 1998 ND 167, 583 N.W.2d 794 (considering policy coverage in an action for garnishment on a default judgment entered against an insured); D.E.M. v. Allickson, 555 N.W.2d 596 (N.D. 1996) (considering policy coverage in an action for garnishment on a stipulated judgment pursuant to a Miller-Shugart agreement); Medd v. Fonder, 543 N.W.2d 483 (N.D. 1996) (same).

Against this backdrop, the undersigned predicts the North Dakota Supreme Court would hold (to the extent it has not already implicitly done so) that a garnishment action under N.D.C.C. ch. 32-09.1 is not a direct action under North Dakota law because the principles and procedures underlying a direct action and a garnishment action are dissimilar. In a direct action, the plaintiff substitutes the insurer for the insured as a party-defendant in suing to establish the insured's liability. In a garnishment action such as the one concerned here, the insured's liability has already been established and the plaintiff is seeking to garnish on an insurance contract. In doing so, the plaintiff is not litigating the liability of the insured, but is only litigating liability of the insurer and the insurer

is no different position than any other party who might be liable to the judgment debtor. The two inquiries are, absent special circumstances, distinct, and nothing within N.D.C.C. ch. 32-09.1 suggests insurers are to entitled to preferential treatment through exemption from garnishment. Here, S & W's garnishment action only seeks to litigate the question of insurance coverage between Zurich and B&D; S & W does not seek to litigate any claim it may have against B&D by substituting Zurich for B&D. This is not a direct action.

Possibly recognizing this distinction, Zurich argues a garnishment under N.D.C.C. ch. 32-09.1 cannot circumvent North Dakota's direct action prohibition, citing Shermoen. Problematically for Zurich, to the extent a garnishment action can be considered one in the same with a direct action, N.D.C.C. ch. 32-09.1 represents a legislative exception to the direct action prohibition. Zurich's tortured reading of Shermoen is just as problematic. As is relevant here, the North Dakota Supreme Court in Shermoen only held that joinder of the insurer as a party-defendant prior to establishment of liability against the insured was "premature." 163 N.W.2d at 745. This characterization as "premature" suggests joinder would be appropriate once the case became sufficiently mature, which, when read in light of the entire opinion, would arguably occur upon entry of judgment against the insured. At that point, Shermoen suggests an action against the insurer would be permitted, and nothing with Shermoen forecloses garnishment as an available option for pursuing that action, which is exactly what occurred in Close, D.E.M., and Medd. In short, Zurich's argument reads far too much into Shermoen at the expense of ignoring N.D.C.C. ch. 32-09.1's allowance of suit against parties liable to the judgment debtor, regardless of whether that party is an insurer.

Based on the foregoing, North Dakota's prohibition on direct actions is not a bar to S & W's garnishment action against Zurich.

22

### C.    *Zurich's argument that S & W lacks standing*

Zurich next argues this action should be dismissed because S & W, as a third-party claimant and a stranger to the contract between B&D and Zurich, does not have standing to litigate the issue of insurance coverage.  To support this argument, Zurich heavily relies on the North Dakota Supreme Court's decision in Rebel, wherein the court stated:

> An insurance contract relates to the parties executing it.  A liability policy is designed for the benefit and protection of the insured and is in no way intended to be of direct benefit to the claimant.  The parties to the policy of liability or indemnity insurance are the insurer and the insured, the latter being the person for whose benefit the policy is procured–usually the employer, or owner, or other person procuring the policy.  Absent a specific contractual or statutory provision, the person actually injured is not the party insured, and has no rights against the insurer, or in or to a policy issued by it under an indemnity contract with the employer, owner, or other person, as the case may be.

Rebel, at ¶ 10 (internal quotations, citations, and alterations omitted).  Thus, Zurich is correct in noting that, generally speaking, a third-party claimant does not have standing to litigate the question of insurance coverage between an insured and insurer for want of an interest in the insurance contract.

There are two problems with Zurich's argument. First, the court does not have before it the insurance policy, so it cannot determine whether there is something in the policy that contractually confers rights upon S & W vis-a-vis Zurich.

Second, where Zurich's argument also goes awry at this early stage, as S & W correctly notes, is that N.D.C.C. § 32-09.1-02 bestows standing onto a judgment creditor to litigate insurance coverage notwithstanding that creditor's third-party status.  In its primary briefing, Zurich, in what can be charitably described as a glaring omission, failed to note the North Dakota Supreme Court in Rebel also said "*N.D.C.C. § 32-09.1-02 grants an injured third-party creditor standing to challenge insurance policy coverage . . . .*" Rebel, at ¶ 13 (italics added).

23

In its reply briefing, Zurich tries to reason around this conferral by relying on Medd v. Fonder, 543 N.W.2d 483 (N.D. 1996). In Medd, Medd sued a fellow employee, Fonder, for injuries sustained on the job at her employer, the Bronze Boot. Id. at 484. Fonder had insurance with Walle Mutual Insurance Co. and the Bronze Boot had insurance with Great American Insurance Co. Id. at 485. Medd and Fonder entered into a stipulated judgment consistent with a Miller-Shugart agreement. Id. No judgment was entered against the Bronze Boot. Medd then sought to garnish against both insurance policies, with both insurers objecting. Id. With regard to Fonder, the North Dakota Supreme Court held Fonder's insurance policy with Walle Mutual did not cover the conduct giving rise to the judgment. Id. at 486-87. With regard to the Bronze Boot, the court held Medd did not have standing to contest Great American's denial of coverage. Id. 487-488. As such, the court affirmed the district court's dismissal of Medd's garnishment action.

How the North Dakota Supreme Court approached Medd reveals the folly of Zurich's standing argument. In regards to Medd's claim against Fonder, against whom judgment had already been entered, the North Dakota Supreme Court addressed the merits of the insurance coverage issue within the garnishment proceeding. In regards to Medd's claim against the Bronze Boot, for which judgment had not been entered, the North Dakota Supreme Court refused to entertain whether insurance coverage existed because Medd did not have standing to litigate the issue. The distinction between the two holdings rests on the fact that the stipulated judgment allowed Medd to invoke the standing provided by N.D.C.C. § 32-09.1-02 to pursue Fonder's insurer. See also N.D.C.C. § 32-09.1-02 (providing garnishment is available to a creditor "after securing a judgment against the debtor . . . ."). The same did not apply to the Bronze Boot's insurer because Medd did not have a judgment against the Bronze Boot.

24

Here, with judgment already entered against B&D, Zurich sits in the same position as Fonder's insurer and S & W sits in the same position as Medd. This suffices to confer third-party standing on S & W to litigate the issue of insurance coverage under the contract between B&D and Zurich, just as it did in Medd. Pursuant to Zurich's invitation for the court "to follow Medd's holding," (Doc No. 13 p. 3), the court does so and holds S & W, as a judgment creditor, has standing under N.D.C.C. § 32-09.1-02 to proceed further. For this reason, S & W's motion to dismiss based on the purported failure to state a claim because of lack of standing fails.

### D.    *Zurich's argument that any liability as a garnishee was discharged by operation of § 32-09.1-11*

Zurich next argues this case should be dismissed because any debt it might owe under the insurance contract with B&D has been discharged by operation of N.D.C.C. § 32-09.1-11, which reads as follows:

> § **32-09.1-11. Effect of disclosure.** Subject to the provisions of sections 32-09.1-12 and 32-09.1-13, the disclosure is conclusive as to all property of the defendant. If the garnishee denies having any indebtedness to the defendant or having any property of the defendant in possession, the *filing in court of a copy of the disclosure operates as a full discharge of the garnishee* at the end of twenty days from the date of service of the disclosure, in the absence of further proceedings as provided for in sections 32-09.1-12 and 32-09.1-13. *The filing of objections to the disclosure or the filing of any motion or other proceedings operates as a stay of the discharge.* The court may, upon proper showing, relieve the plaintiff from the operation of the discharge after the expiration of twenty days. The garnishee may be discharged where the value of the property of the defendant held or indebtedness owing to the defendant is less than ten dollars, and the garnishee may apply to the court to be discharged as to any property or indebtedness in excess of the amount which may be required to satisfy the plaintiff's judgment.

(italics added). Zurich argues the discharge occurred upon the failure of S & W to take any action within twenty days after the service of its disclosure form on September 27, 2016.

Zurich admits, however, that its disclosure was not filed in court, whether federal or state, until Zurich removed this case on January 9, 2017. (Doc. No. 7 p. 10). This admission, as S & W

correctly notes, is fatal to Zurich's discharge claim under N.D.C.C. § 32-09.1-11.

The problem with Zurich's argument is that it fails to take into account the language of § 32-09.1-11 set forth in italics as set forth above. That is, while the date of service of the disclosure may control when the garnishee is to be discharged, the filing of the garnishee disclosure with the court controls whether the garnishee can be discharged at all. And here, the disclosure was not filed with the court prior to the service of S & W's objections to Zurich's disclosure statement on December 28, 2016, which then stayed any discharge.

But, even if the court has erred in its interpretation of § 32-09.1-11, the court concludes that Zurich's failure to file its disclosure is sufficient justification under § 32-09.1-11 for the court to grant relief from the operation of any discharge.

## IV.    CONCLUSION AND ORDER

Based on the foregoing, the court concludes that the Zurich had the right to remove this garnishment proceeding and that the removal was timely. Hence, the court **DENIES** the Motion to Remand (Doc. No. 10). Also, the court concludes that S & W has stated a plausible claim upon which relief can be granted. Accordingly, Zurich's Motion to Dismiss (Doc. No. 6) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 21st day of July, 2017.

*/s/  Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court

26